SHARP, Chief Judge.
Kinard, d/b/a K & S Automotive appeals from a final judgment which awarded her $65.00 for a towing charge (out of the proceeds of a forfeited vehicle) and which denied her any sums for storage or repair costs. The vehicle, a 1977 BMW, had been forfeited to the state, pursuant to §§ 932.-702, 932.703, Florida Statutes (1985), and Kinard was permitted to assert a lien against the car to recover her costs and charges. We affirm.
Based on the Statement of Facts in appellant’s brief, and appellee’s acceptance of them, as well as appellee’s concessions at oral argument, we were prepared to reverse this case and award Kinard her full costs and charges. However, the trial judge, who held a non-jury trial in this case, made a finding that Kinard should *50 not recover storage costs and repair bills, not because she failed to establish a lien as a matter of law,[1] but because she failed to establish “by a preponderance of the evidence” that she was “entitled to any lien or equitable satisfaction for any storage or repair costs which may have been incurred by her regarding the subject automobile....”
There is adequate support in the record for this conclusion. Mrs. Kinard and Mrs. Stone (Kinard’s daughter who worked in the K & S business) testified that the $5.00/day storage charge for the impounded BMW, which was towed to the K & S lot at the direction of the Florida Highway Patrol, was justified. This was disputed by the state’s witnesses. Lt. Campbell testified he asked K & S to keep the vehicle without storage charges because the BMW was going to be forfeited. Kinard told him there would be no storage charges and she called that same message in to the Florida Highway Patrol dispatcher. Had Campbell known K & S was going to charge for storage, he would have moved the car to another impoundment place.
' With regard to repairs to the BMW, Ki-nard testified the man she thought owned the car (Mr. Wells), asked her to “take care” of the car, and “fix it,” in various short conversations at the yard and in the courthouse. Accordingly, she took the car from Putnam County to Lakeland to get work done on it by a BMW dealer, replaced a battery and fan belt, and had it waxed, cleaned up and detailed. She testified she did this for all cars left in storage with K & S for a long time.
Whether or not such a general authorization from a purported owner of an impounded vehicle would suffice to justify recovery of the repair bills, Kinard’s testimony was refuted substantially by the state’s witnesses. Mr. Wells testified that the BMW was not his car. He was a partner in a business that owned the car. He had worked on the car as a mechanic. The car did not need any repairs, and he never asked Kinard to “take care of” the car or to “fix it.” He did not authorize a trip to Lakeland for any purpose. Neither did the Florida Highway Patrol.
Bradley, an investigator with the state attorney’s office, testified that the Florida Highway Patrol decided to move the car to another safe impoundment yard, because Kinard and Stone were using the BMW to drive around the state. He ordered Kinard to bring the car back from Lakeland directly to the courthouse. When Campbell and Bradley went to K & S to get the car, K & S refused to give them the keys and an employee removed a battery from the car. (Evidently, the original battery had gone bad.) The police put the replacement battery back into the car and left. As soon as they got the BMW back under their control, they had to replace the battery obtained from K & S with a new one to make the BMW serviceable.
AFFIRMED.
DAUKSCH and DANIEL, JJ., concur.

. Kinard asserted a myriad of possible lien claims pursuant to §§ 932.702, 932.703, Fla.Stat. (1985).